IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| MARK P. BIXLER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 10-CV-745-JED-FHM |
| | ) | |
| CAPTAIN JERI SHAW, | ) | |
| JAILOR BEVERLY MAXWELL, | ) | |
| | ) | |
| Defendants. | ) | |

<u>OPINION AND ORDER</u>

On November 23, 2010, Plaintiff Mark P. Bixler, a prisoner appearing pro se, filed a 42

U.S.C. § 1983 civil rights complaint against Jailor Beverly Maxwell, Captain Jeri Hall, Jailor Omar

L/N/U,[1] and Undersheriff Mike Waters, (Doc. 1), accompanied by a motion to proceed in forma

pauperis, (Doc. 2). Since filing his complaint, Plaintiff has been transferred to the custody of the

Oklahoma Department of Corrections (DOC). His complaint concerns treatment he received while

in custody at the Pawnee County Jail (PCJ). By Order filed November 30, 2010, (Doc. 3), the Court

granted Plaintiff's motion to proceed in forma pauperis and directed him to pay the full $350 filing

fee in monthly installments.

On February 3, 2012, the Court dismissed the claim against Undersheriff Waters, but gave

Mr. Bixler further leave to amend his complaint and re-assert his claims against Defendants Maxwell

and Shaw. *See* Doc. 48. Plaintiff timely filed his second amended complaint, (Doc. 52), on March

8, 2012. Defendant Shaw filed a Motion to Dismiss pursuant to Fed. R. Civ. P. 8(a) and 12(b)(6),

---

[1]By way of an amended complaint, Plaintiff clarified that Captain Jeri Shaw, not Captain Jeri Hall, was the correct defendant, and he dismissed his claims against Defendant Omar L/N/U (Doc. 15).

(Doc. 53), and Defendant Maxwell filed a Motion for Summary Judgment, (Doc. 60), upon the Court's directive, (Doc. 57), on May 10, 2012.

For the reasons discussed below, the Court finds that, despite being afforded the opportunity to cure deficiencies in the original and the first amended complaints, the second amended complaint fails to state a claim upon which relief may be granted against Captain Jeri Shaw. For that reason, the Motion to Dismiss the Second Amended Complaint by Defendant Shaw (Doc. 53) is granted and the claims against Shaw are dismissed with prejudice. The Court also finds that Defendant Maxwell is entitled to summary judgment and her motion is granted as no genuine dispute of material fact exists.

### BACKGROUND

Plaintiff was arrested on July 29, 2008, on charges of first degree murder and booked into PCJ the following day. On June 12, 2009, Plaintiff was convicted on his plea of no contest to first degree manslaughter entered in Pawnee County District Court, Case No. CF-2008-049. Plaintiff remained in PCJ until he was transferred to DOC custody on April 6, 2010.

In its February 3, 2012 Opinion and Order (Doc. 48), the Court determined that the first amended complaint failed to state a claim upon which relief could be granted, but granted Plaintiff leave to file a second amended complaint against Defendants Maxwell and Shaw. Specifically, the Court held that Plaintiff failed to "allege sufficient facts to support an inference that Maxwell or Shaw acted with deliberate indifference" to Plaintiff's need for medical treatment because it was "not clear" that they personally participated in the alleged activity. *Id.* at 10. The Opinion and Order also noted that Plaintiff "could possibly state a claim if he could identify Maxwell or Shaw as the state actors who committed other acts alleged in the amended complaint," *id.* at 9, and that "additional

2

facts stated in his response suggest that he may be able to state conditions of confinement claims," *id.* at 11.

In the "Nature of Case" section of the second amended complaint, Plaintiff writes: "While a pretrial detainee in the [PCJ], Petitioner was denied necessary medical treatment when jail staff exhibited a deliberate indifference to Petitioner's serious medical needs." (Doc. 52 at 2). Plaintiff asserted two claims against Defendants Shaw and Maxwell:

Count I: Beverly Maxwell and Jeri Shaw exhibited deliberate indifference to Petitioner's serious medical need in violation of the Eighth and Fourteenth Amendment of the United State Constitution.

Count II: Beverly Maxwell and Jeri Shaw deprived Petitioner of his 14th Amendment right to due process when they, while Petitioner was a pretrial detainee, failed to provide adequate clothing, hygiene opportunity

(Doc. 52 at 2, 5). In his prayer for relief, Plaintiff asks for nominal monetary damages. *Id.* at 7.

## ANALYSIS

### A. Defendant Shaw's Motion to Dismiss

#### 1. Dismissal standards

Federal courts must engage in a preliminary screening of cases in which prisoners seek redress from a governmental entity or officer or employee of a governmental entity. *See* 28 U.S.C. § 1915A(a). The court must identify any cognizable claim and dismiss any claim which is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915A(b). To avoid dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6), a complaint must present factual allegations, assumed to be true, that "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007). The complaint must contain "enough facts to state a claim to relief that

3

is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Context is particularly critical to this determination with respect to prisoner litigation. *See Gee v Pacheco*, 627 F.3d 1178, 1185 (10th Cir. 2010) ("[A] prisoner claim will often not be plausible unless it recites facts that might well be unnecessary in other contexts."). Prisoners' constitutional rights "must be exercised with due regard for the 'inordinately difficult undertaking' that is modern prison administration." *Thornburgh v. Abbott*, 490 U.S. 401, 407 (1989) (quoting *Turner v. Safley*, 482 U.S. 78, 85 (1987)). A court must accept all the well-pleaded allegations of the complaint as true, even if doubtful in fact, and must construe the allegations in the light most favorable to the plaintiff. *Twombly*, 550 U.S. at 555. However, "when the allegations in a complaint, however true, could not raise a [plausible] claim of entitlement to relief," the cause of action should be dismissed. *Id.* at 558. The Court applies the same standard of review for dismissals under 28 U.S.C. § 1915(e)(2)(B)(ii) that is employed for Federal Rule of Civil Procedure 12(b)(6) motions to dismiss for failure to state a claim. *Kay v. Bemis*, 500 F.3d 1214, 1217-18 (10th Cir. 2007).

A pro se plaintiff's complaint must be broadly construed under this standard. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Haines v. Kerner*, 404 U.S. 519, 520 (1972). The generous construction to be given the pro se litigant's allegations "does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). A reviewing court need not accept "mere conclusions characterizing pleaded facts." *Bryson v. City of Edmond*, 905 F.2d 1386, 1390 (10th Cir. 1990); *see also Twombly*, 550 U.S. at 555 ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss

4

does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." (quotations and citations omitted)). The court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997). Thus, "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall*, 935 F.2d at 1109-10 (10th Cir. 1991).

### 2.    Legal analysis

As previously noted, Plaintiff filed his second amended complaint under 42 U.S.C. § 1983. Section 1983 provides a claim for relief against state actors for violation of a plaintiff's federal rights. *Becker v. Kroll*, 494 F.3d 904, 914 (10th Cir. 2007). To state a claim under § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Anderson v. Suiters*, 499 F.3d 1228, 1232-33 (10th Cir. 2007). A defendant must personally participate in the alleged conduct causing the constitutional violation in order to be held liable under § 1983. *Henry v. Storey*, 658 F.3d 1235, 1241 (10th Cir. 2011); *Trujillo v. Williams*, 465 F.3d 1210, 1227 (10th Cir. 2006); *Olson v. Stotts*, 9 F.3d 1475, 1477 (10th Cir. 1993). The plaintiff must also allege that the defendant intentionally deprived him of a constitutional right. *Martinez v. Uphoff*, 265 F.3d 1130, 1133-34 (10th Cir. 2001). "Neither simple nor gross negligence implies an intentional and deliberative violation of constitutional rights, and consequently neither form of negligence satisfies the scienter

requirement of § 1983." *Johnson v. Martin*, 195 F.3d 1208, 1219 (10th Cir. 1999) (quoting *Woodward v. City of Worland*, 977 F.2d 1392, 1400 (10th Cir. 1992)).

To state a § 1983 claim for a violation of a convicted prisoner's Eighth Amendment rights due to inadequate medical care, the prisoner must allege facts evidencing a deliberate indifference to his serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). Although Plaintiff was a pretrial detainee during much of his period of incarceration at PCJ, his right to receive adequate medical care is nonetheless protected by the Fourteenth Amendment and the standard for evaluating his claim under the Fourteenth Amendment is the same – Plaintiff must demonstrate "deliberate indifference to serious medical needs." *Garcia v. Salt Lake County*, 768 F.2d 303, 307 (10th Cir. 1985). "'[I]nadvertent failure to provide adequate medical care' does not rise to a constitutional violation." *Martinez v. Beggs*, 563 F.3d 1082 (10th Cir. 2009) (quoting *Estelle*, 429 U.S. at 105-106).

"Deliberate indifference" is defined as knowing and disregarding an excessive risk to an inmate's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 827, 114 S.Ct. 1970 (1994). The Supreme Court clarified that the deliberate indifference standard under *Estelle* has two components: (1) an objective requirement that the pain or deprivation be sufficiently serious; and (2) a subjective requirement that the offending officials act with a sufficiently culpable state of mind. *Wilson v. Seiter*, 501 U.S. 294, 298-99 (1991). Negligence does not state a claim under § 1983 for deliberate indifference to medical needs. *Hicks v. Frey*, 992 F.2d 1450, 1455 (6th Cir. 1993). A delay in medical care constitutes a constitutional violation only where the plaintiff can show that the delay resulted in substantial harm. *Oxendine v. Kaplan*, 241 F.3d 1272, 1276 (10th Cir. 2001). In addition, differences in judgment between an inmate and prison medical personnel regarding

6

appropriate medical diagnosis or treatment are not enough to state a deliberate indifference claim. *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976).

In his second amended complaint, Plaintiff states that he specifically informed Captain Shaw and the medical staff at PCJ of his "suspected influenza and wrote repeated requests . . . seeking medical care after not being able to hold down food and coughing excessively."[2] (Doc. 52 at 4). At some point in the 2-4 weeks following these requests, paramedics were called to the jail, allegedly for another inmate with symptoms similar to Plaintiff's, and, while there, examined Plaintiff and concluded that he needed to go to a hospital emergency room (ER) for further examination. *Id.* At the ER, Plaintiff was given intravenous fluid and "again informed that he had a staph infection." *Id.* Plaintiff alleges that the ER doctor "told the deputy that [the two week delay] was wrong and that he was calling the health department." *Id.*

---

[2]This is the only allegation in the second amended complaint against Captain Shaw that is properly before the Court. In Plaintiff's Response to Defendant Shaw's Motion to Dismiss, Plaintiff mentions he fell in the shower and was refused medical care by Shaw. The Court acknowledges that Plaintiff mentioned the fall in his second amended complaint, but he failed to allege any denial of medical treatment for any injuries he may have sustained or allege that he suffered any substantial harm or lingering injury caused by the fall. *See* Doc. 52 at 7. Plaintiff did raise these claims against Defendant Shaw in the original complaint, (Doc. 1 at 7), and in his Response, (Doc. 58 at 1). However, this legal theory was not stated within the second amended complaint, nor did Plaintiff seek leave to amend his complaint to state this claim.

The Court cannot piece together facts from prior iterations of the complaint in order to prevail on a motion to dismiss. The Court must look only to the second amended complaint when assessing Plaintiff's claims since an amended complaint supercedes and replaces the original and all other prior complaints. *See Mink v. Suthers*, 482 F.3d 1244, 1254 (10th Cir. 2007) (citing *In re Atlas Van Lines, Inc.*, 209 F.3d 1064, 1067 (8th Cir. 2000) ("since an amended complaint 'supercedes an original complaint and renders the original complaint without legal effect'.")); *see also* LCvR9.2(c). Furthermore, parties cannot amend their complaint through subsequent motions or responses to motions. *See Commonwealth of Pennsylvania v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988); *Hayes v. Whitman*, 264 F.3d 1017, 1025 (10th Cir. 2001) (citing *PepsiCo*, 836 F.2d at 181)). Thus, the claim of refusal of medical care after a fall in the shower, as raised in Plaintiff's response to Defendant Shaw's Motion to Dismiss, is not stated in the second amended complaint and raising it in the response, does not cure any deficiencies in that complaint. It is not properly before the Court.

Accepting the allegations of the second amended complaint as true and construing the allegations in the light most favorable to Plaintiff, the allegations against Captain Shaw are insufficient to raise a claim that Defendant Shaw violated Plaintiff's constitutional rights under the Eighth Amendment. Even were there a delay in providing medical attention for Petitioner's self-diagnosed "influenza," the facts alleged do not show that Plaintiff suffered substantial harm as a result of the delay nor do they show that Shaw disregarded an excessive risk to Plaintiff's health. Plaintiff offers only his conclusory statements. Thus, Plaintiff has failed to allege facts sufficient to give rise to a claim under § 1983, against Defendant Shaw.

To the extent that Plaintiff alleges that Defendant Shaw is liable because of her position as Captain, "'[§] 1983 does not authorize liability under a theory of respondeat superior.'" *Schneider v. City of Grand Junction Police Department*, 717 F.3d 760 (10th Cir. 2013) (quoting *Brown v. Montoya*, 662 F.3d 1152, 1164 (10th Cir. 2011)). "'Absent vicarious liability, each Government official . . . is liable for his or her own misconduct.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 667 (2009)). Without an "affirmative link" between the supervisor and the constitutional violation, there is no liability on the supervisor. *Id.* (citing *Dodds v. Richardson*, 614 F.3d 1185 (10th Cir. 2010)). Here, Plaintiff has failed to demonstrate an affirmative link between Shaw and any constitutional violation. Therefore, Captain Jeri Shaw's motion to dismiss shall be granted as to all claims raised by Petitioner.

The Court further finds that it would be futile to allow Plaintiff to amend his complaint yet again. Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that leave to amend a complaint should be freely given "when justice so requires." "[D]istrict courts may withhold leave to amend only for reasons such as 'undue delay, bad faith, or dilatory motive on the part of the

8

movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, or futility of the amendment.'" *United States ex rel. Ritchie v. Lockheed Martin Corp.*, 558 F.3d 1161, 1166 (10th Cir. 2009) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).  Plaintiff was provided an opportunity to amend his complaint in order to identify how Defendant Shaw may have violated his constitutional rights.   The facts in the second amended complaint were insufficient to raise a claim against Defendant Shaw, making leave to amend further, futile.  Hence, the claim against Defendant Shaw is dismissed with prejudice.

**B.**     **Motion for Summary Judgment by Defendant Maxwell**

    **1.**     **Summary judgment standards**

Summary judgment pursuant to Fed. R. Civ. P. 56 is appropriate where there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Kendall v. Watkins*, 998 F.2d 848, 850 (10th Cir. 1993).  The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 317.  "Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law." *Kaul v. Stephan*, 83 F.3d 1208, 1212 (10th Cir. 1996).  "Summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury

could return a verdict for the nonmoving party." *Durham v. Xerox Corp.*, 18 F.3d 836, 838-39 (10th Cir. 1994).

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (citations omitted).  In its review, the Court construes the record in the light most favorable to the party opposing summary judgment. *Garratt v. Walker*, 164 F.3d 1249, 1251 (10th Cir. 1998).  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.  In essence, the inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52.

## 2.      Legal analysis

Defendant Maxwell offers three theories of relief in her motion for summary judgment: Plaintiff failed to exhaust his administrative remedies; Ms. Maxwell is entitled to summary judgment in her favor on the merits; and that, she is entitled to qualified immunity.  The Court will address each of these in turn.

### a.      Exhaustion of administrative remedies

Defendant Maxwell argues that Plaintiff failed to exhaust the administrative remedies available at PCJ, and, therefore, the case should be dismissed. (Doc. 60 at 11).  Defendant Maxwell cites the Prison Litigation Reform Act (PLRA) in support of her argument, which provides that "[n]o

action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).  This provision applies "to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).  Moreover, exhaustion of administrative remedies under the PLRA is required for all inmates seeking relief in federal district court regardless of the type of relief available under the institutional administrative procedure. *Woodford v. Ngo*, 548 U.S. 81 (2006); *Booth v. Churner*, 532 U.S. 731, 741 (2001).  The "failure to exhaust is an affirmative defense under the PLRA . . . ." *Jones v. Bock*, 549 U.S. 199, 216 (2007).

The statutory exhaustion requirement is mandatory, and this Court is not authorized to dispense with it. *See Beaudry v. Corr. Corp. of America*, 331 F.3d 1164, 1167 n.5 (10th Cir. 2003). However, PLRA exhaustion is not jurisdictional.  A district court may "dismiss plainly meritless claims without first addressing what may be a much more complex question, namely, whether the prisoner did in fact exhaust available administrative remedies." *Woodford*, 548 U.S. at 101.  When a court evaluates whether an inmate exhausted his administrative remedies, "[s]ection 1997e(a) says nothing about a prisoner's subjective beliefs, logical or otherwise, about the administrative remedies that might be available to him.  The statute's requirements are clear: If administrative remedies are available, the prisoner must exhaust them." *Chelette v. Harris*, 229 F.3d 684, 688 (8th Cir. 2000).

Defendant Maxwell asserts that Plaintiff "did not file any formal grievances pursuant to the Pawnee County Sheriff's grievance with regard to any of his claims in this suit." (Doc. 60 at 11). Plaintiff alleges that he did file grievances and that then-Undersheriff Mike Waters came to see him

11

each time he filed a grievance, essentially acknowledging receipt of the grievance he had filed. *See* Doc. 52 at 5; Doc. 61 at 1. Defendant Maxwell claims Plaintiff is incorrect. Defendant Maxwell argues that Plaintiff's allegations that he filed grievances are "conclusory testimony" and "insufficient to withstand summary judgment." (Doc. 60 at 11). In support of Defendant Maxwell's argument, Sheriff Mike Waters provides his affidavit, stating that while he was Undersheriff, he "would have reviewed inmate grievances as of October 1, 2009, [but] I do not recall receiving any grievances from [Plaintiff], and I know that I never had a conversation with [Plaintiff] regarding any grievances." (Doc. 62, Ex. 4).

It is undisputed that PCJ has written grievance procedures. *See* Doc. 60-3; Doc. 61 at 1-2. Plaintiff states that the grievance procedures contain "a simple procedure that requires only that an inmate make a written statement of the grievance and seal it in an envelope addressed to the Facility Administrator or Sheriff." (Doc. 61 at 1). He argues, however, that "there is no grievance appeal procedure in place at the [PCJ], thus there is no mechanism to appeal an adverse response to a higher authority and the grievance process was therefore exhausted once Mike Waters came to address the complaint in person with Plaintiff." *Id.* at 2.

Plaintiff was at PCJ from July 30, 2008 through April 6, 2010, except for the 3-4 week period in November and December 2008 when he was hospitalized and receiving medical treatment as a consequence of his attempted suicide. As discussed *infra*, most of the deprivations alleged by Plaintiff occurred prior to October 1, 2009, when he was on suicide watch in early 2009. Plaintiff attempts to offer proof that he filed grievances, stating that he had copies in a box containing his property when he was transferred to DOC custody. *Id.* However, Plaintiff alleges that PCJ "confiscated" this box "under the guise of being mailed home to his family." *Id.* Defendant

12

Maxwell, in response to Plaintiff's claim of confiscation of property, discovered that PCJ was still in possession of the box.[3] The box was brought to Sheriff Waters on June 8, 2012. (Doc. 62 at 3). Upon opening the box, Sheriff Waters stated, by way of an affidavit, that Plaintiff "did not have any grievance forms in his belongings." *Id.*, Ex. 4. Defendant Maxwell also provided an affidavit from PCJ employee, Nicole Clymer, explaining the steps taken in an to attempt to return Plaintiff's property as he requested. *See id.*, Ex. 5.

Plaintiff fails to address or controvert the summary judgment evidence provided by Defendant Maxwell. He has not demonstrated that he filed formal grievances for the claims raised in this suit. Thus, Plaintiff has failed to show that he exhausted administrative remedies. *See, e.g., Stone v. Albert*, 257 F. App'x 96, 100 (10th Cir. Dec. 3, 2007) (unpublished)[4] (noting that uncontradicted affidavit of prison records custodian was sufficient to establish that prisoner failed to exhaust administrative remedies). Furthermore, Plaintiff has failed to show there is a "genuine issue for trial" as to exhaustion of administrative remedies. *See Matsushita Elec. Indus. Co.*, 475 U.S. at 586-87. Because Plaintiff failed to exhaust the administrative remedies provided by PCJ, the motion for summary judgment filed by Defendant Maxwell shall be granted.

---

[3]Upon his transfer to DOC custody, Plaintiff's personal items were inventoried and Plaintiff authorized Barbara Skelton, his mother, to pick up the items. (Doc. 62, Ex. B). She was notified and requested that the items be mailed to her. PCJ officials informed her that she needed to make arrangements to prepay the shipping costs. PCJ officials never received any prepaid shipping arrangements. Thus, the property was still in the possession of PCJ as of June 8, 2012, the date it was inspected by Sheriff Waters, five days prior to Defendant Maxwell's reply to Plaintiff's Response, and more than two years after Plaintiff's transfer to DOC custody.

[4]This, and any other unpublished disposition cited herein, is cited for their persuasive authority in accordance with Tenth Circuit Rule 32.1.

The Court also concludes that, for the reasons discussed below, even if Plaintiff could demonstrate that he exhausted his administrative remedies, Defendant Maxwell would be entitled to summary judgment based on application of the governing constitutional standards to the facts as developed in the summary judgment record.

### b.      Count I - Deliberate Indifference to Serious Medical Needs

In Count I, Plaintiff claims that he endured several instances of deliberate indifference to his serious medical needs by Defendant Maxwell.[5] He specifically identifies four instances where he claims that Defendant Maxwell exhibited deliberate indifference: treatment for a foot fungus; lack of treatment for a staph infection on two separate occasions; treatment for the flu; and treatment for a toothache. As discussed above, to state a claim under § 1983, a plaintiff must allege two essential elements: that a right secured by the Constitution or laws of the United States was violated, and that the alleged violation was committed by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Anderson v. Suiters*, 499 F.3d 1228, 1232-33 (10th Cir. 2007).

The record contains ample evidence supporting Defendant Maxwell's assertions that Plaintiff received medical care throughout his stay at PCJ. Additionally, the record shows that when Plaintiff submitted requests for medical evaluation, PCJ officials acted promptly. It should also be noted that Plaintiff became a DOC inmate on June 12, 2009, but remained in custody at PCJ until April 6, 2010. Once a prisoner is designated as a DOC inmate, officials at PCJ must submit all medical requests by the DOC inmate to officials at Dick Conner Correctional Center (DCCC), a DOC facility

---

[5]The Court notes that in Plaintiff's response to Defendant Shaw's Motion to Dismiss, he complained that he was denied medical care after falling in the shower. *See supra* n.2. As discussed, this claim is not properly before the Court. Even if it were, the record disproves Plaintiff's claims, as it demonstrates Plaintiff received prompt medical care for these claims. *See* Doc. 24-3 at 27-30; Doc. 24-4 at 2-5, 13-17; Doc. 60-2 at 2-6.

located in Hominy, Oklahoma. (Doc. 60). Before an inmate can receive the medical attention requested, DOC officials must approve the request. *Id.*

### Foot Fungus

Plaintiff alleges that he developed a foot fungus from "showering without foot protection in an unsanitary showering condition" and that the fungus "lingers to this day." *See* Doc. 52 at 3. Plaintiff submitted an undated medical complaint stating that his "feet itch real bad." (Doc. 60-1, Ex. E). This request was sent to DOC for approval on August 31, 2009. *Id.* Plaintiff was seen by W.E. Clymer, D.O., in Pawnee, Oklahoma on September 11, 2009, and given two prescriptions, Bactrim DS and Nizoral. (Doc. 24-7 at 4-5; Doc. 60-1 at 3-4). According to the Physician's Desk Reference (www.pdr.net), Bactrim is a combination of two antibiotics, sulfamethoxazole and trimethoprim, and Nizoral is the brand name for ketoconazole, an anti-fungal agent. PCJ submitted a request to DOC for approval of the prescriptions on September 15, 2009. DOC approved the antibiotic prescription in its "formulary" constituents of sulfamethoxazole and trimethoprim, but did not approve the Nizoral, stating that it is "non-formulary. Ask provider to consider alternative." (Doc. 60-1 at 19). However, nothing in the record suggests that an alternative medication was sought from Dr. Clymer.

Contrary to Plaintiff's claims, Defendant Maxwell did not refuse to give Petitioner the medicine he was prescribed. The "medication dispense logs," provided by Defendant Maxwell, show that, beginning September 17, 2009 and continuing until October 17, 2009, Plaintiff received the antibiotic drugs approved by DOC. (Doc. 60, Ex. H). Plaintiff did not receive the anti-fungal drug. This was not, however, because Defendant Maxwell "refused to give Petitioner the medicine." (Doc. 52 at 3). Rather, it was because PCJ was not given approval for the medication by DOC. (Doc. 60-1 at 4, 19).

An Eighth Amendment claim cannot be made against Defendant Shaw simply on the basis that DOC denied the medication request for the anti-fungal medication. *See, e.g., Arocho v. Nafziger*, 367 F. App'x 942 (10th Cir. 2010) (unpublished) (finding that, absent a showing that the defendant knew the harm involved should the treatment for an inmate be denied or delayed, a defendant properly seeking approval of medical treatment from Bureau of Prisons for a federal prisoner evidences no neglect); *see also Green v. Lawhorn*, 2012 WL 786331, at *20 (D. Kan. Mar. 8, 2012) (holding that there is no federal constitutional violation by a doctor when his request for a particular medication for an inmate was denied, absent allegations by the inmate that there was more the doctor could have done to obtain approval). The request for Nizoral was submitted to DOC with a note, explaining that the prescription was for a "rash on bottom of feet." (Doc. 60-1 at 19). In its denial, DOC requested that the provider prescribe an alternative medication that was on DOC's formulary. *Id.* However, Plaintiff does not allege that Defendant Maxwell refused to seek an alternative medication, or was even aware that, at the time, DOC requested an alternative medication, or failed to take any subsequent actions in light of the denial with a knowledge that Plaintiff faced an excessive risk of harm without this particular medication. Based on the information before the Court, Plaintiff fails to state an Eighth Amendment claim against Defendant Maxwell regarding medical treatment of the foot fungus.

Further, under the facts of this case, Plaintiff will not be granted leave to amend the second amended complaint. The Court recognizes that, in *Arocho*, the Tenth Circuit concluded that the inmate plaintiff should be granted an "opportunity to amend his pleadings on remand to state a claim, if possible," against the Clinical Director after the Colorado Bureau of Prisons did not approve treatment for an inmate with Hepatitis C. In that case, the plaintiff alleged that the Clinical Director

16

"failed to act for immediate treatment of plaintiff's condition with deliberate indifference" and "did

nothing to prevent the delay and denial of proper treatment." *Arocho*, 367 F. App'x at 945-46, 955.

The facts of this case, however, do not warrant leave to amend.   While Hepatitis C is

"unquestionably a serious medical problem," *Bender v. Regier*, 385 F.3d 1133, 1137 (8th Cir. 2004),

"every court to have considered the question has held that a foot fungus . . . does not satisfy the

objective component of an Eighth Amendment deliberate indifference claim." *Gray v. Ghosh*, 2013

WL 5497250, at *1 (N.D. Ill. Oct. 3, 2013)[6]

---

[6]The district court in *Gray v. Ghosh* cited: *Tsakonas v. Cicchi*, 308 F. App'x 628, 632 (3d Cir. 2009) (holding that "eczema of the feet [and] athlete's foot" are not objectively serious under the Eighth Amendment); *Smith v. Schwartz*, 2011 WL 2115831, at *3 (S.D. Ill. May 26, 2011) ("Smith's allegations that he suffered chronic itching, athlete's foot, chafing, peeling skin, and a painful, infected rash on his buttocks due to an inability to shower and clean his cell while Pinckneyville was locked down do not show a serious medical condition."); *Thompson v. Carlsen*, 2010 WL 3584409, at *1 (N.D.N.Y. Aug.16, 2010) ("dry and cracked skin, and athlete's foot . . . are not 'serious' medical problems under Eighth Amendment standards"), *report and rec. adopted*, 2010 WL 3584396 (N.D.N.Y. Sep. 7, 2010); *Walker v. Dart*, 2010 WL 669448, at *4 (N.D. Ill. Feb. 19, 2010) ("Although uncomfortable, a foot fungus, or athlete's foot, is not a serious medical need or injury."); *Patterson v. Kim*, 2009 WL 2982753, at *8 (W.D. Mich. Sep. 14, 2009) ("Plaintiff's alleged ingrown toenail and foot fungus are not 'serious medical needs' sufficient to support the objective component of an Eighth Amendment claim."); *Cox v. Hartshorn*, 503 F. Supp. 2d 1078, 1085 (C.D. Ill. 2007) (holding that "[a] fungal foot rash" is not an objectively serious medical condition); *Rush v. Schrubbe*, 2007 WL 2686843, at *2 (E.D. Wis. Sept. 11, 2007) ("athlete's foot itself does not generally amount to an objectively serious medical condition"); *Russell v. Ohio Adult Parole Auth.*, 2007 WL 129000, at *4 (S.D. Ohio Jan. 12, 2007) (same); *Sanders v. Allen Cnty. Jail*, 2006 WL 2578977, at *2 (N.D. Ind. Sept. 6, 2006) ("Athlete's foot, another fungal infection for which there is a substantial risk at communal showers, is not a serious harm."); *Rogers v. Allen Cnty. Jail*, 2006 WL 1441092, *2 (N.D. Ind. May 25, 2006) (holding that "athlete's foot" does not "constitute a serious medical need"); *Calhoun v. Thomas*, 360 F. Supp. 2d 1264, 1287 (M.D. Ala. 2005) (holding that "athlete's foot" and "bleeding feet" do not satisfy the "first, objective inquiry"); *Davis v. Lawson*, 2005 WL 2293752, at *3 (N.D. Ind. Sept. 19, 2005) ("Athlete's foot is simply not a serious medical need within the meaning of [the Eighth Amendment]."); *Landfair v. Sheahan*, 878 F. Supp. 1106, 1112 (N.D. Ill.1995) ("While no doubt uncomfortable, athlete's foot cannot be considered an injury serious enough to satisfy the objective component of [an Eighth Amendment deliberate indifference claim]."); *see also Sledge v. Kooi*, 564 F.3d 105, 107-08 (2d Cir. 2009) (holding that eczema is not objectively serious under the Eighth Amendment).

While the Tenth Circuit has not specifically addressed whether a foot fungus satisfies the objective component of an Eighth Amendment deliberate indifference claim, it has provided guidance as to what constitutes serious medical harm. In *Mata v. Saiz*, 427 F.3d 745 (10th Cir. 2005), the Circuit Court stated that if the "harm suffered rises to a level 'sufficiently serious' to be cognizable under the Cruel and Unusual Punishment Clause" of the Eighth Amendment, the objective component of the test for deliberate indifference is met. *Id.* at 752-53. The Court explained that "the focus of the objective prong should be solely on whether that harm is sufficiently serious," *id.* at 753, and not solely on "the symptoms presented at the time the prison employee has contact with the prisoner." *Id.* Here, Petitioner does not allege any sufficiently serious harm as a result of the denial of the anti-fungal medication for the foot fungus. He simply states that the "fungus lingers to this day." (Doc. 52 at 3, 7). This is insufficient to satisfy to objective component of an Eighth Amendment claim, Defendant Maxwell is entitled to summary judgment in her favor on this claim.

### Staph Infections

Plaintiff alleges that he had a staph infection on two separate occasions and did not receive treatment for two months in each instance. (Doc. 52 at 3). Plaintiff was unable to pinpoint exact dates of these two illnesses other than "sometime in 2009." *Id.* He states that the Defendants can provide the exact dates through the grievances and medical requests he submitted in relation to his staph infection. *Id.* Plaintiff also alleges that he had "6-8 open, oozing lesions" and that Defendant "Maxwell told Plaintiff to be quiet about it, in order that the other inmates did not become alarmed." (Doc. 61 at 3-4). Plaintiff claims that these lesions gave Maxwell "adequate notice of the severity of the staph infection, which would have caused a reasonable person to take action." *Id.* at 4.

18

Defendant Maxwell denies knowing that Plaintiff had a staph infection and argues that there is no support for his claims of two staph infections in Plaintiff's medical records, nor were any grievances filed by Plaintiff about a staph infection. (Docs. 60 at 14; Doc. 62 at 4).

The medical records provided as part of the Special Report are lengthy. The records for 2009 reflect that Plaintiff had five appointments for medical care and one psychiatric evaluation for a complaint of depression. (Docs. 24 and 60). These appointments were in April, August, September, October, and November of 2009. *Id.* Plaintiff's medical request forms, which correspond to those medical appointments, make no mention of oozing or open lesions or a staph infection in general. Also, nothing in the medical records suggests that Plaintiff received any treatment for a staph infection at any time during 2009, nor in 2010.[7] The standard for summary judgment requires the party who will bear the burden of proof at trial to make a sufficient showing of evidence to establish the existence of an element essential to that party's case. *Celotex*, 477 U.S. at 317. Plaintiff will

_____

[7] In his second amended complaint, Plaintiff alleges that he "was informed" that he had a staph infection by an ER doctor while receiving treatment for his "suspected influenza." (Doc. 52 at 4). The records from Cushing Regional Hospital, however, state that Plaintiff was diagnosed only with bronchitis, sinusitis and dehydration, and not a staph infection. (Doc. 24-3). The only mention of a possible staph infection is found in the medical records from Plaintiff's hospitalization after his suicide attempt on November 17, 2008. Following his attempted suicide, Plaintiff was initially transported from PCJ to Cushing Regional Medical and then, that same day, transferred to St. John Medical Center in Tulsa, Oklahoma. (Doc. 24-12, at 1, 16). Plaintiff's initial screening report from St. John does not mention any infections or open sores. *Id.* at 16-18. The first reference to staphylococcus appears in the blood and sputum culture reports for samples collected on December 5, 2008. *Id.* at 20. The report from a respiratory culture, dated December 8, 2008, reads, "[u]sual mixed flora with moderate amount of staphylococcus aureus (methicillin resistant) NOTE: Resistant organism/contact precautions." *Id.* A blood culture report, also dated December 8, 2008, says, "Staphylococcus species, coagulase negative isolated." *Id.* When Plaintiff was discharged from St. John on December 19, 2008, PCJ was provided a "Discharge Adult Form" with a handwritten note, stating: "MRSA culture pending. (Patient is to remain in isolation until cleared). Results will be called to you today." *Id.* at 12. On December 20, 2008 at 0825, the MRSA culture results read, "*Negative* for Methicillin Resistant S Aureus (MRSA)." *Id.* at 36 (emphasis added). The record contains no additional notes of treatment for a staph infection after December 20, 2008.

bear the burden at trial to show a deliberate indifference to serious medical need. Plaintiff has failed to show evidence of the two alleged staph infections. Thus, summary judgment in favor of Defendant Maxwell is proper.

### Treatment for the Flu

Plaintiff alleges that he had "suspected influenza" and "wrote repeated requests to staff and Captain Shaw and the medical staff at PCJ." (Doc. 52). Plaintiff's only allegation against Defendant Maxwell concerns the dispensing of cough syrup sent to Plaintiff by his mother. Plaintiff alleges that the reason he was not allowed to have the cough syrup was that "the cough syrup was to be given at night and because Captain Maxwell did not work at night, [Plaintiff] was not allowed to have it." *Id.* Defendant Maxwell admits that Plaintiff's mother did send him Vicks NyQuil around the same time Plaintiff was diagnosed with bronchitis, sinusitis, and dehydration. (Doc. 60 at 5). Defendant states, however, that because of NyQuil's ingredients, "Plaintiff was not allowed to keep it in his cell as he requested," but that it was provided to him as directed on the label. *Id.* Plaintiff does not dispute these facts in his response. *See* Doc. 61.

Even accepting Plaintiff's allegations as true, however, Plaintiff has failed to show that the denial of NyQuil resulted in a serious medical harm. Rather, it appears that Plaintiff was dissatisfied with the decision to not allow him to keep the NyQuil in his cell. Plaintiff has failed to allege a constitutional violation and summary judgment in favor of Defendant Maxwell is proper.

### Toothache

Plaintiff states that when he was booked into PCJ on July 30, 2008, he had developed a severe toothache and was taking penicillin for the toothache. (Doc. 52 at 5). The record of Plaintiff's booking at PCJ supports his assertion. (Doc. 24-1 at 3). Plaintiff alleges that he submitted several

medical requests and grievances, but did not receive medical attention for the toothache until April 2009. (Doc. 52 at 5).  Defendant Maxwell states that she was not aware of Plaintiff's toothache until April 14, 2009, when his jaw was swollen.  (Doc. 60 at 5).  When she became aware of the toothache, she obtained permission to take Plaintiff to Trinity Dental Clinic for treatment.  *Id.*  Plaintiff was diagnosed with an abscessed tooth and the dentist would not extract the tooth until the procedure was paid for in advance. *Id.* at 6.  Defendant Maxwell informed Plaintiff of this requirement by the dentist, and Plaintiff told Maxwell that his mother would pay for it in advance. *Id.*  She did so, and the tooth was extracted.  Plaintiff alleges that the only reason he received dental care was because his mother paid for it.  (Doc. 52 at 5).

Delay in receiving dental care can constitute deliberate indifference to a serious medical need and thus violate an inmate's constitutional rights. *McGowan v. Hulick*, 612 F.3d 636 (7th Cir. 2010). The Second and Seventh Circuits have held that tooth decay and tooth cavities can "constitute an objectively serious medical condition because of pain and the risk of infection." *Berry v. Peterman*, 604 F.3d 435 (7th Cir. 2010) (citing *Board v. Farnham*, 394 F.3d 469 (7th Cir. 2005); *Harrison v. Barkley*, 219 F.3d 132 (2d Cir. 2000)).  In *Berry*, the Seventh Circuit found plaintiff had alleged sufficient facts to allow a jury to conclude that the jail doctor showed deliberate indifference to the plaintiff's dental needs.  There, the plaintiff had numerous medical complaints and several visits to the doctor regarding his tooth pain.  However, the doctor "would not refer Berry to a dentist unless and until he presented either a 'dental emergency' or infection." *Berry*, 604 F.3d at 442.  The Seventh Circuit concluded that this resulted in a substantial and unnecessary delay in the plaintiff's treatment, making summary judgment inappropriate. *Id.*

21

Here, Plaintiff arrived at the jail with a toothache, was taking medication for the toothache, and the record shows that he made a complaint of a toothache in a medical request on October 1, 2008. (Doc. 24-1, 24-7). This medical request also included complaints of severe abdominal and kidney pain. *Id.* Plaintiff received medical treatment for the abdominal and kidney pain, but there is no record of medical attention for the toothache. The record does not contain another complaint of a toothache until April 14, 2009, when Plaintiff presented with a toothache and a swollen jaw. (Doc. 60 at 5). There was a prompt response to this medical complaint, which included a prescription for an antibiotic and pain medication. *See* Doc. 24-3 at 5. These are the only two references to a toothache found in the record.

A delay of five to six months before receiving treatment for a dental problem, which, when treated, required antibiotics and pain medication, could be of concern. However, this case presents intervening circumstances that lead the Court to conclude that, to the extent there was a delay in providing dental care, it does not rise to the level of a constitutional violation. Plaintiff made his first medical request on October 1, 2008. (Doc. 24-7 at 12). Plaintiff was promptly treated by Dr. Clymer on October 16, 2008, *id.*, for the "abdominal pain and blood in his urine." (Doc. 24 at 4). Four weeks later, on November 17, 2008, Plaintiff attempted suicide[8] by hanging at PCJ, and was hospitalized for several weeks. (Doc. 24-12). Upon his release from St. John, on December 19, 2008, Plaintiff was prescribed an anti-depressant, a blood thinner, and an antiepileptic medicine. *Id.* at 14. At PCJ, Plaintiff was placed under 24-hour surveillance in a special cell and received the

---

[8]In Plaintiff's second amended complaint, he states that he attempted to commit suicide on November 22, 2008. (Doc. 52 at 3). The Special Report, however, includes statements from Pawnee Police Department personnel, a Pawnee County Sheriff Incident Report, and the St. John Medical Intake for Plaintiff's hospitalization following the suicide attempt, all demonstrating that the suicide attempt occurred during the early morning of November 17, 2008. (Doc. 24-12 at 1-9, 16).

blood thinner for three months, or through mid-April 2009. (Doc. 24-3 at 5). On March 24, 2009, Plaintiff was given a one-week prescription for amoxicillin for an unstated ailment. *Id.* Then, on April 14, 2009, four months after his return to PCJ, Petitioner filed his next complaint of a toothache and presented a swollen jaw. Upon doing so, Defendant Maxwell promptly sought dental care for Plaintiff. (Doc. 60 at 6). Plaintiff also received a five day prescription for amoxicillin and an "as needed" prescription for hydrocodone. (Doc. 24-3 at 5).

After reviewing the record, the Court concludes that the facts in this case are distinguishable from those presented in *Berry*. No medical practitioner refused to treat Plaintiff upon presenting an ailment, nor does the record suggest that Plaintiff repeatedly recorded complaints of a deteriorating tooth condition. The facts alleged here are not sufficient to demonstrate deliberate indifference to a serious medical need by Defendant Maxwell. Even if she were negligent in seeking medical treatment for the toothache, "negligent failure to provide adequate medical care . . . does not rise to a constitutional violation." *Herl v. Gamble*, 124 F. App'x 630 (10th Cir. 2005) (unpublished). Additionally, because the initial request for medical attention for the toothache is prior to November 22, 2008, any deliberate indifference that may have occurred in response to that request is time-barred per this Court's Opinion and Order filed on February 3, 2012. (Doc. 48). Accordingly, Defendant Maxwell is entitled to summary judgment for all claims arising from the toothache.

In summary, after a review of the record and the claims of deliberate indifference to a serious medical need in Plaintiff's second amended complaint, the Court concludes that Defendant Maxwell is entitled to summary judgment in her favor as to all claims in Count I.

### c.   Count II - Failure to provide adequate clothing and hygiene.

In Count II of the second amended complaint, Plaintiff alleges that, upon returning to PCJ following his attempted suicide and subsequent hospital stay, he was not provided with "any other clothing or the necessary mattress, sheets and blanket." (Doc. 52). He also alleges that he was not provided socks, toothbrush, toothpaste, soap, shower shoes, or underwear. *Id.* As a result, Plaintiff's feet "remained frigid for nearly 4 weeks before he was provided a pair of socks." *Id.* Plaintiff also alleges that he developed a foot fungus as a result of not having shower shoes while in the "detox" cell despite "repeatedly ask[ing] Cpt. Maxwell for shower shoes." Defendant Maxwell disputes each of these claims.

The Supreme Court has acknowledged that the Constitution "'does not mandate comfortable prisons,' and only those deprivations denying 'the minimal civilized measure of life's necessities' are sufficiently grave to form the basis of an Eighth Amendment violation." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347, 349 (1981)). While the conditions under which a convicted prisoner is held are subject to scrutiny under the Eighth Amendment, the conditions under which a pretrial detainee is confined are scrutinized under the Due Process Clauses of the Fifth and Fourteenth Amendments. *See Bell v. Wolfish*, 441 U.S. 520, 535 n.16 (1979). "Although the Due Process clause governs a pretrial detainee's claim of unconstitutional conditions of confinement, the Eighth Amendment standard provides the benchmark for such claims." *Craig v. Eberly*, 164 F.3d 490, 495 (10th Cir. 1998) (citation omitted). "The Eighth Amendment requires jail officials to provide humane conditions of confinement by ensuring inmates receive the basic necessities of adequate food, clothing, shelter, and medical care and by taking reasonable measures to guarantee the inmates' safety." *Id.* (internal quotation omitted). "To

hold a jailer personally liable for violating an inmate's right to humane conditions of confinement, a plaintiff must satisfy two requirements, consisting of an objective and subjective component." *Id.*

Defendant Maxwell responds to Plaintiff's first two claims, denial of "any other clothing or the necessary mattress, sheets and blanket" and denial of socks, toothbrush, toothpaste, soap, shower shoes, or underwear, by stating that Plaintiff was deprived of these items because he was placed in an isolation cell and on suicide watch from December 19, 2008, through February 7, 2009. (Doc. 60 at 20). Defendant Maxwell states that it is PCJ protocol to remove all clothing and personal items from prisoners on suicide watch and issue the inmate a padded suicide smock and blanket, which cannot be torn into pieces. *Id.* The padded blanket is to be used to sleep on and cover the inmate. *Id.* Defendant also states that the smock and blanket are issued as a set and not as individual items, *see* Doc. 62 at 5, and provided an affidavit confirming that Plaintiff was issued the suicide smock and blanket as a set, *see* Doc. 60, Ex. 1 at ¶ 10. Plaintiff responds by stating that he was not given the "no-tear" blanket until after a month in the "near-frigid" detox cell. (Doc. 61 at 3). Defendant Maxwell also states that Plaintiff was provided toothpaste, toothbrush, and soap for "use when needed under supervision," but that these items are removed from the cell after their use when the inmate is on suicide watch. (Doc. 60 at 21). Plaintiff offered no response. (Doc. 61).

Plaintiff's third claim is that Defendant Maxwell failed to "provide him with socks and/or any other means of getting warm" while in a "frigid" isolation cell. (Doc. 52 at 6). Defendant Maxwell states that during the cold winter months, PCJ relies on radiator heaters to heat the jail. (Doc. 60 at 20-21). These heaters are placed throughout the facility and, for the isolation cell where Plaintiff was held while on suicide watch, the heater is placed directly across from the cell door. *Id.* The cell door to the isolation cell is perforated, *see* Doc. 60-1 at 12-13, allowing heat to pass

25

through, into the cell area. (Doc. 60 at 20). Defendant Maxwell also states that she did not receive any complaints from Plaintiff about being cold, nor was she advised by any of the jailers that Plaintiff complained of being cold. *Id.* at 28. Plaintiff failed to offer a response. (Doc. 61).

Finally, in response to Plaintiff's claim of not having shower shoes, Defendant Maxwell states that Plaintiff was provided rubber shower shoes, along with the suicide smock and blanket when he was placed in the isolation cell. (Doc. 60 at 27). Plaintiff argues that he had to purchase his own shower shoes when he was "released from the detox tank back into general population," and states that proof of this can be found in the "canteen purchase receipts from the [PCJ]." (Doc. 61 at 3). Defendant argues that even if this were true, it does not prove that Plaintiff was deprived of the shower shoes while in the isolation cell. (Doc. 62 at 5).

Significantly, Plaintiff's conditions of confinement claims concern the period of time he was on suicide watch. As a result, his claims must be considered in that context. Plaintiff was on suicide watch for his own protection. The conditions in the isolation cell are meant to insure the inmate's safety and may not be comfortable. Yet, this does not mean that Plaintiff can be denied "the minimal civilized measure of life's necessities." *Wilson*, 501 U.S. at 298.

As discussed above, "[i]n an Eighth Amendment conditions of confinement claim, a plaintiff must show an objective and subjective component. 'First, the deprivation alleged must be, objectively, sufficiently serious.' Second, the prison official's 'state of mind must be one of deliberate indifference to inmate health or safety.'" *Skelton v. Bruce*, 409 F. App'x 199, 202 (10th Cir. 2010) (unpublished) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). Here, Plaintiff has failed to show that the deprivation of clothing items was "sufficiently serious" to rise to the level of an Eighth Amendment claim. Plaintiff has also failed to show that the conditions in the isolation

26

cell were something more than uncomfortable, an excessive risk to his health, or to demonstrate "sufficiently serious" harm as a result of the conditions. Plaintiff's complaints of the cell being cold are countered by affidavits stating that Plaintiff never filed a grievance and that a heater was directly across from the door to Plaintiff's isolation cell. Furthermore, Plaintiff has failed to show that Defendant Maxwell was deliberately indifferent to Plaintiff's health or safety. In fact, the record demonstrates just the opposite: that Defendant Maxwell, as well as others at PCJ, were concerned for Plaintiff's health and safety, and thus placed him in the isolation cell for suicide watch where he received 24-hour surveillance and no access to items that he could use to harm himself. Finally, Plaintiff has failed to produce evidence or allege facts "on which the trier of fact could reasonably find for the plaintiff." *See Anderson*, 477 U.S. at 252.

Therefore, after reviewing the evidence in the light most favorable to Plaintiff, the Court finds no "genuine issue for trial" as to the claims alleged against Defendant Maxwell. Therefore, Defendant Maxwell's motion for summary judgment is granted.

### d. Qualified immunity

Finally, Defendant Maxwell argues that she is entitled to qualified immunity for the conduct alleged by Plaintiff. (Doc. 60 at 21). Qualified immunity provides that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The Supreme Court in *Saucier v. Katz*, 533 U.S. 194 (2001) set forth a mandatory two-prong test to resolve all qualified immunity claims. *Id.* at 201. A court had to first determine whether the facts alleged by Plaintiff were sufficient to make out a violation of a constitutional right. If Plaintiff was

27

successful, then the court had to determine whether the right was "clearly established" at the time of the defendant's alleged misconduct. *Id.* "If no constitutional right would have been violated were the allegations established," then no further inquiry regarding qualified immunity was required. *Id.* The Supreme Court, however, stepped back from the mandatory nature of using this two-prong analysis, *see Pearson v. Callahan*, 555 U.S 223 (2009), and now permits courts to "exercise [their] sound discretion in deciding whether to bypass the first question and proceed directly to the second." *Lynch v. Barrett*, 703 F.3d 1153 (10th Cir. 2013).

The Court determined above that the uncontroverted evidence provided by Defendant Maxwell, viewed in the light most favorable to Plaintiff, does not demonstrate that Plaintiff was denied adequate medical care in violation of his constitutional rights, or that the conditions of Plaintiff's confinement violated his constitutional rights. Thus, Plaintiff has failed to allege facts sufficient to make out a violation of a constitutional right. Accordingly, Defendant Maxwell is entitled to qualified immunity. Therefore, the motion for summary judgment is granted in favor of Defendant Maxwell.

**ACCORDINGLY, IT IS HEREBY ORDERED that:**

1.  Defendant Shaw's motion to dismiss (Doc. 53) is **granted**.

2.  Plaintiff's claims against Defendant Shaw, as raised in the amended complaint (Doc. 52), are **dismissed with prejudice** for failure to state a claim upon which relief may be granted. 28 U.S.C. § 1915(e)(2)(B)(ii).

3.  Defendant Maxwell's motion for summary judgment (Doc. 60) is **granted**.

4.  A separate judgment shall be entered in this case.

**ORDERED THIS** 14th day of January, 2014.

JOHN E. DOWDELL
UNITED STATES DISTRICT JUDGE